May it please the Court, I am William Addingly here on behalf of the West Virginia CWP Fund. As we've discussed in the prior case, part of the operator's argument is the same as this situation. There are certain differences between this case and Owens and Gump that the Court considered before. One of the problems in Owens and Gump was that pneumoconiosis was not proven. In Mr. Bender's case, that's not an issue. He has pneumoconiosis. The question is what caused his disabling pulmonary impairment? The administrative law judge in his decision at page 52 of the Joint Appendix correctly states that the employer's physicians state that the disability is a result of tobacco abuse, lung cancer, and cancer treatment. And he finds reasons that he doesn't want to credit Drs. Caffrey, Tudor, and Zaldivar. Dr. Caffrey said he looked at the biopsy of the lung tissue. It affected such a small tissue, it could not have caused a functional decrement. The administrative law judge didn't really say that was incorrect, but he went to Dr. Rasmussen's contrary testimony where Dr. Rasmussen explained a finding of limited pneumoconiosis doesn't exclude coal mine dust exposure as a contributing cause of the disabling lung disease. While that's true, it doesn't analyze the point that Dr. Caffrey, the pathologist, was making. The pathologist was saying there's a huge amount of change here. It's due to lung cancer. There's incidental pneumoconiosis. Pneumoconiosis is not causing the impairment. That's not a rational reason for not giving Dr. Caffrey's opinion credit. The next opinion is Dr. Tudor. The administrative law judge correctly notes that Dr. Tudor concluded the disability was a result of cigarette smoking and lung cancer treatment and that chemotherapy and radiation therapy also took its toll, causing pulmonary abnormality. Then the administrative law judge said Dr. Tudor did not explain how he can determine that none of the miners' impairment is due to coal dust exposure. When you look at Dr. Tudor's report, that statement is not supported by substantial evidence. Dr. Tudor explains, I've quoted in the brief and it's in the joint appendix, the numerous reasons why he goes through the clinical records in this case and is able to state that pneumoconiosis is not the cause of the pulmonary impairment. Isn't the issue what does he have to say why in order to rule out? Or is it sufficiently to say why he thinks it's other causes and give substantive reasons and then say therefore I rule out pneumoconiosis? Is that sufficient if we were to adopt the rule out standard? If rule outs apply to Dr. Tudor's opinion, he meets it, in my opinion. Because what Dr. Tudor does... And what language? There's reference to crackling in the lung. But what other evidence, I mean what other discussion in Dr. Tudor's opinion meets that in your view? He reaches a series of conclusions in his report where he explains why he believes the lung cancer or chemotherapy and radiation therapy and then explains... That gets back to the question, does he have to explain why exposure to coal dust does not cause that disability? Or is it simply adequate to conclude it does not? Because I think if this becomes an issue in terms of writing this appeal, that's going to be a big question, isn't it? It could be. I think he fulfills both questions or he establishes both in this case. Because what he does in his report is he explains here are the series of diseases that this man has. Here are the series of impairments. Here's why I think the impairments are due to these diseases. And then on page 228 of the joint appendix he explains why he believes that pneumoconiosis or coal dust exposure is not the cause of the obstructive abnormality that was presented in this case. But I think the employer's strongest evidence comes from the third physician, Dr. Zaldivar. And the administrative law judge said that he also found that pneumoconiosis didn't play a role in this case. And then he said he doesn't adequately explain why the worsened results would not be due to pneumoconiosis, which is a progressive disease. That's just not true. Dr. Zaldivar initially said he couldn't rule out some contribution from coal dust exposure in Mr. Bender's case. He had a chance to consider prior studies that were done years after Mr. Bender left coal mining during years while he continued to smoke cigarettes and was able to factor that in as to a causation analysis, full well knowing that pneumoconiosis can be progressive and admitting that in his deposition. But this wasn't the pattern that you saw in progressive pneumoconiosis. This was explained by a gentleman who continued to smoke at least one package of cigarettes per day, got lung cancer, had part of his lung surgically removed, and had chemotherapy and radiation therapy to remove it. What we're asking when you look at the facts of the administrative judge's decision in this case, his factual findings are not based on substantial evidence contained in the root. The reasons he gives for discrediting the opinions of Drs. Caffrey, Zaldivar, and Tudor just don't stand up. Well, as to Dr. Zaldivar's testimony, even if it had been credited, it doesn't satisfy the rule outstander, does it? Oh, I think he does. Because Mr. Foreman asked him in deposition, are you able to say that pneumoconiosis didn't play any role in causing the impairment? And he says, I'm 100% able to say that. These studies, these older studies, allow me to reach that conclusion that absolutely none of this man's impairment is due to pneumoconiosis. And that logically makes sense in this case. Because Mr. Bender left the mines, worked for about another seven years, had this pulmonary functions, continued to smoke, got lung cancer, got retested, had the radiation therapy, the chemotherapy, had a huge decrement in his ability to have lung function, all due to those diseases that were not caused, contributed to, or aggravated by coal dust exposure. Drs. Zaldivar meets that rule outstander. But the problem here is the administrative law judge has given reasons that just don't justify discrediting those position opinions. With regard to Dr. Tudor, wasn't his reasoning more isolating pneumoconiosis, considering the issue of pneumoconiosis in isolation, and really saying it alone didn't cause it? He was pointing to other things, but when he zeroed in on the issue of pneumoconiosis, it seems to me he's really talking about pneumoconiosis viewed in isolation. Based on the pulmonary function studies and the physical exam, he says, the presence of simple pneumoconiosis is of insufficient severity and profusion to produce symptomology, and on this basis is not disabling. To me, that could be read two ways, to say on this basis it's not disabling at all, or this basis it is not alone disabling. I mean, he's not really that clear in that language, is he, when he concludes? I think he concludes that it's not disabling at all, is the way I would read that, and I would read that in concert with his concluding paragraph at the end of the report, because that first paragraph that you've looked at, Judge Keenan, is where he's discussing the possibility of clinical pneumoconiosis. Then later on, he says, okay, I also have to consider legal pneumoconiosis. This man has obstructive airways disease. Why is it I conclude that the obstructive airways disease is related to smoking, as opposed to coal dust exposure? Let me tell you why. He cites studies, he gives you his reasoning, and explains, I think within a reasonable grammatical certainty, as experts do, that this man's impairment is due to smoking, lung cancer, and its treatment, not due to a chronic coal mine dust-induced lung disease. Do you have any issue in this case with the fact that the interim presumption was applied by the ALJ? The interim presumption's the wrong presumption to use, obviously. The ALJ's decision was caught in that no man's land. There was nothing to... We didn't have guidance, because the Congress and the President signed into law the ACA, which changed the statute. The old regulation, by definition, could not be applied to claims filed after 1982, so we were all left to guess what the statute meant, which is one of the problems and one of the reasons why, in these cases, I keep going back to Usry and say that's the only guidance I had. But if the regulation is upheld, just assume for purposes of argument, then that takes care of that problem, doesn't it? If the regulation is upheld, this administrative law judge didn't apply that regulation. Right, I understand. But if the regulation is upheld as a proper exercise of agency authority under Chevron, then the issue of interim presumption versus rule of standard really is a non-issue in this case. We've got to decide whether it's precluded by Usry. Is that correct? I would agree. And the two standards are relatively close in proximity, so you'd be talking about the same type of rebuttal standard. And again, this case... And Mr. Bender's not in the 10-year, 15-year, the difference in the interim and the... No. Okay. He's way beyond... He's entitled to the 15-year presumption. There's no issue with that, because he had enough coal mine employment and he had disabling lung disease. The issue that we've faced all along in these cases without guidance from the agency before the regulation was promulgated is, what are we supposed to do? Employers tried to defend the cases using the language from Usry, using the definition of pneumoconiosis, using the definition of disability. And as you suggested, Judge Harris, in the last case, the flip side of what a claimant has to prove to establish entitlement without the presumption showed that pneumoconiosis was not a substantially contributing cause of any disability. I think that's important to realize in this case, and it logically makes sense much more than what the director has suggested in the regulation. Right. But doesn't it logically make sense then to up the ante on the operator by means of regulation when the legal pneumoconiosis greatly relaxes for a subset of minors, the people who meet the 15-year requirement? Isn't that sort of the logical flip side? And why not... I think it's the contrary. It's what? It's contrary to what would be logical. Okay. Why is that? Those people who have 15 years of employment in disabling lung disease are presumed to have legal pneumoconiosis, whether they can prove it or not. So you're giving that class of individuals, whether they have pneumoconiosis or not, a presumption of disability due to pneumoconiosis and then requiring the employer to show that it's not present. In essence, it's making the presumption... You're saying it's a negative kind of situation. Yes. And the presumption becomes much like the irrebuttable presumption when you have complicated pneumoconiosis. In subsection C3, Congress told us that they knew how to make an irrebuttable presumption, and they did that in cases of complicated pneumoconiosis. You're presumed to be disabled, whether you are or not. That's not what the 15-year presumption did, and that reads out the limitation on the secretary from the statute, which has to mean something. All right, sir. Thank you. Mr. Bakowsky. Good morning again, Your Honors. My name is Sean Bakowsky, and I represent the Department of Labor's Office of Workers' Compensation Programs. I'm not going to repeat everything that I said during the argument earlier today, unless the Court would like me to. But I would like to address a couple things that the petitioner brought up in their argument in this case. The first is that this idea that there was no guidance after Congress brought back the 15-year presumption in 2010. I think that's just not true. The Department of Labor issued a regulation back in 1980 that said to rebut the presumption, you need to show either that there's no pneumoconiosis or that the disability to not arise in whole or in part out of dust exposure in coal mine employment. And that was interpreted by the Board in multiple cases, by this Court, to mean rule out. And those are the same words that were used in the interim presumption rebuttal regulation. And there are even more cases, you know, entering that section of the interim presumption, because the interim mostly overlapped in the same times, 15-year presumption, and it was easier to get. So that's what most cases were decided under. It had that same whole or in part language, and it was understood universally to mean rule out. Now, it's true that, you know, when Congress got rid of the 15-year presumption in, after 1982, the old regulation, there's a bit, a subsection added to the very end that said, you know, this regulation doesn't apply to cases after, you know, the statutory amendment. But I think it's still quite clear that this was the, you know, official pronouncement. This is the official interpretation of the 15-year presumption offered by the Department of Labor, and it would remain that way until it was superseded by another one. And, you know, it was superseded by the 2013 version of the regulation, but that applies the exact same standard. You can show no pneumoconiosis, or you can rule out any connection between pneumoconiosis and disability. And those are the ways that you can rebut. If your honors have any more questions for the government? Just to help me clarify one thing. So that, it does seem to me that really the thrust of the operator's argument is like, just, you know, this isn't fair. Maybe it's not even reasonable under Chevron Step 2 to have these two different standards, the substantial outstander on the other. So just, when did the substantial contributing cause standard become part of the regulation? Was that 2000? That was the first time it was explicit in the regulations was 2000. The 1980 version of the regulation didn't have an explicit standard for disability causation, though in the regulation for death causation, the Black-Owned Benefits Act also compensates survivors for death due to pneumoconiosis. That was defined to be, you know, the death is a substantially, or the pneumoconiosis is a substantially contributing cause of the death. And that's since 1980? That has been, that was, yeah, for the death causation since 1980. Okay. Sorry, I just wanted to figure out how the relationship between the two sets of regulations. Okay. Right. And, you know, I think it was a, you know, and the different standard is, you know, a recognition of the fact that minors with more than 15 years are not similarly situated, and that Congress, you know, picked out these, this category of minors and said, you know, these people are, you know, they're where, you know, in 72 Congress said, there are too many claims being denied. We think there are people that are entitled to benefits who aren't getting them, so we're going to relax this burden of proving causation. I think, you know, it's pretty widely believed that, you know, causation is one of the more vexing issues in all kinds of law. You know, I remember as a first year trying to wrap my mind around Mrs. Paul's photograph and her adventures on the train platform and, you know, on the Title VII context, you know, you have, you know, the courts have developed this, you know, shifting burdens to try to figure out, you know, was this employment action related to a discriminatory motive or not. And I think that's a very serious problem in black lung for a couple of reasons. The first is, you know, your typical black lung claimant is an older person who often has multiple health problems. And the more health problems you have, the more difficult it is to sort of, you know, specifically trace, you know, which disease causes, you know, which, you know, disability and how, you know, what percentage or what portion of the disability you can attribute to each of these different diseases. And the second problem is that in black lung there's actually two causation inquiries. So you have to go on that, you have to examine whether there's a relationship between the coal mine work and the disease, so you know whether or not there's pneumoconiosis. And then after that, you have to go back there and figure out, well, what's the link between that disease, the pneumoconiosis, and the disability. But not under the presumption. Right. Under the presumption, you still do the, you know, the employer still gets the full dress opportunity at the first, you know, down the first rabbit hole to say that's not a substantially, there's no substantial link between the dust and the disease. But once they fail to do that, we have a minor who has 15 years of totally disabling lung disease and has pneumoconiosis, the regulation says we're just not going to do this, you know, full dress adventure into causation on disability causation. It's abbreviated disability causation. If you can show that the pneumoconiosis doesn't cause any part of the disability, if you can show that the minor would be just as disabled right now if he or she didn't have pneumoconiosis, then you can rebut. But if you can't do that, if you can't provide credible medical testimony establishing that fact, we're just not going to, you know, entertain this, you know, trying to figure out, well, is it substantial? Is it material? Is it, you know, 1%? Is it 5%? You know, we're not going to, we're just not going to go there in the 15-year presumption on disability causation, and I think that's a completely reasonable interpretation of the statute, and I hope the score agrees. I'm sorry, I just, this is... Oh, please. So the idea is, like, this is inevitably kind of a gray area between no part rule out and substantial cause, that that's always going to be hard to figure out where exactly you fall in that, and given the presumption that's embedded in the statute, it makes sense to sort of give that one to the claimant. Yes. Yeah, okay. That's probably a much more succinct way of putting it. No, no, no, I'm messing with this. Okay. I also say, as we pointed out in a brief, the Department of Labor doesn't take a position on the substantial evidence issues in this case, but I would like to conclude by urging the Court to address the rule out standard issue in its opinion. There are, this has been, there are a number of other cases out there that present the issue, and it would be, this is the highest volume black lung circuit, so it would be good to have a final answer. All right, sir, thank you very much. Thank you. We'll hear from Mr. Forman now. May it please the Court, I'm Roger Forman, and I'm here on behalf of Page Bender. The judge, and one of the things I would direct this Court to, is the standard of review, because we're talking about these medical opinions, and I believe the judge was correct in rejecting both the opinions of Dr. Tudor and Dr. Zaldivar, and I'll get to Caffrey in a minute, but he was also correct on that, and he did that based upon . . . Caffrey's an easier issue because he bought, the judge looked at what Dr. Rasmussen said, that you can have minimal or no findings and still be disabled from pneumoconiosis. What in your view, as a matter of law, Mr. Forman, does a physician have to do in order to rule out? In other words, what's your position? Is it enough simply to list the conditions you think are causative, and then say, therefore, I conclude that this other condition is not causative, or do they need to say why it is not causative? Do they need to affirmatively articulate the basket of issues, and then say how they interrelate? What is your position on that? I think they should have a legal reason behind what they're doing, and it should be grounded in medicine and in the regulations, the preamble, the law that NIOSH and Department of Labor recognize as appropriate, and that's the problem with the opinions and why the judge is correct in determining that both Dr. Zaldivar and Dr. Tudor, their opinions were not reasoned. They're not reasoned. Would you address each one of those doctors specifically, because Mr. Mattingly, I think, made some pretty strong points with regard to both of them. I understand. I think you have to go to, let's start with Tudor, okay? And I think you have to go to Tudor's report, and of course, we know that he wasn't an examiner, which doesn't really make any difference. Dr. Johnson said that doesn't make any difference. I understand that. But if you go to volume two of the appendix, and at page 232, you really see the entirety of his opinion in the last paragraph. He says a lot of things that are wrong, and Your Honor, Judge Keene, and I'm not going  I mean, the medical records are clear with that. And as Mr. Bukowski properly said, these coal miners have lots of problems. Twenty-two years underground, you might come out fine, you might not. And Page Bender did not in the ultimate result. In the last paragraph, what you really understand is that Dr. Tudor really sort of works on his own language. Dr. Tudor recognizes at that point that you can have the same problems for both cigarette smoking and from coal workers, from coal dust exposure. But what he says here and the reason that he actually makes his decision is in that paragraph, it's because of statistical arguments from medical literature which he cites. He's not giving Mr. Bender an individual determination. He's writing a treatise that basically says, you know, because Zaldivar and that article that Zaldivar wrote, Morgan Lapp and Zaldivar, and that argument has been discredited a number of times by a lot of people, including Dr. Rasmussen. It relates non-smoking miners. It doesn't deal with what happens to a smoking miner now. So it really doesn't relate to Mr. Bender. And he's relying on that and a couple of other arguments, and he rejects some of the medical that's appropriate, that is not appropriate for him to reject. But he made a statistical decision because he also cannot separate out. He says that it happens, but it happens less to coal miners in coal mining than it does in smoking. That's the argument he ultimately makes, and for that reason, he blames everything upon smoking. I don't think there's any other substance to his argument to what Tudor presents, and I think that's, I mean, for that reason alone, the judge is right and Tudor is appropriately rejected because he doesn't make the appropriate connection. Now. Tudor's language is pretty strong, though, isn't it? His language is strong, but he's paid for strong language, Your Honor. Well, that well may be the case, but still, it's strong, and I think experts are generally paid, aren't they? I think they are. Well, that's no surprise. Yeah, but . . . I guess it comes down to, you're saying that Dr. Tudor didn't adequately explain why the disability is not caused in whole or in part by . . . Absolutely correct. Instead of giving an individualized decision, he made a statistical argument that this is why I can blame that. That's the language at 230 based on the pulmonary function studies, but he also says, and the physical exam. Well . . . Isn't he talking about the physical exam of the patient? Don't know the answer to that. Okay. I really can't answer what he means. We didn't have the opportunity to depose him, but he admits that this particular disease phenomenon could be seen as related to coal mine dust. So once he admits that and goes on from there and says this is statistically why I say that, he's not really dealing with Page Bender at that point. He's dealing with his belief that the literature supports his position. So it is strong language, but if you look at that, you will say that . . . I would hope that you would look at that particular part of the report, and when you do, you will be of the opinion that . . . in my opinion, I hope you are, that there's some error here. No error in the judge's position. Now Zaldivar, you know, the ultimate thing you see in Zaldivar's opinion is that he actually . . . and the judge picked that up, that he really was denying the progressivity of pneumoconiosis. Something progressed, and it's very seductive to say that he was worse because of smoking and he was worse because of his cancer and he was worse because of the sequelae of the treatment, but that doesn't say that the pneumoconiosis wasn't worse. You don't go back to a report seven years ago and change your opinion, because his initial opinion . . . I was surprised when I was going into Dr. Zaldivar's deposition, because I've been deposing him for 30 years, and . . . Do you think he was assuming that because Mr. Bender was out of the mines that he didn't have to account for it? What's your reasoning on that? My reasoning on it is that Dr. Zaldivar found a basis to say, aha, now I can decide this in favor of the coal mine operator. Now that's a little bit sarcastic, but it's based on those years of dealing with this man. When I went in there and I saw that he had supported my case in his report, I didn't expect him to turn around at that point and say, ah, I saw this report from seven years prior and this report satisfies me that all the progression was due to all these other diseases. That's what happened at that point. That's also not reasoned, because it's in the preamble. It's in the Eastern versus Director Scarborough case. We understand progressivity, and Dr. Rasmussen talked about progressivity. Right. Mr. Foreman, though, you do have a red light, so . . . Oh. Okay. Thank you very much, sir. We appreciate . . . I am sorry. No. We appreciate your presentation. Mr. Mattingly. Let me first point you to page 275 of the Joint Appendix, where Dr. Zaldivar explains why the progression here was not consistent with the natural progression of pneumoconiosis. I think that satisfies the progression concern. The administrative law judge just simply didn't consider all the evidence in front of him, so the finding, in fact, is not based on substantial evidence and has to be vacated. The director has suggested a bifurcated standard to rebut the presumption, that employers only have to show that a disease is not substantially contributed to by coal dust to disprove the existence of legal pneumoconiosis, but then elevate that to a rule-out standard for disability causation. That's a policy decision that the Secretary of Labor doesn't have the authority to make in this situation. Their regulations are inconsistent with it. The definition of disability in the act is inconsistent with that, and it's still inconsistent with USRI. Because USRI stands for the proposition interpreting the 15-year presumption, the Secretary has two ways to rebut the 15-year presumption. Show there's no pneumoconiosis, or show that the respiratory or pulmonary impairment did not arise out of or connection with employment in a coal mine. That's rule-out. The Secretary can't say employers have to rule-out too. That's the point. That statute allows them to limit employers to the same limitations that the Secretary has to rebut the 15-year presumption. Which is the question reserved in footnote 40 of the opinion. Which is the question that the Supreme Court didn't reach in footnote 40. Because they said the regulations hadn't been challenged by the operators. Boy, I wish they had been way back when, but they weren't. And your argument would make all kinds of sense, I agree. I think the argument still makes sense from what the court told us in bits and pieces. I've been through that now one and a half times or twice, and you don't want to hear it and I don't want to say it again. But Judge Niemeyer got it right in Owens. USRI says what it says. The Secretary of Labor can't promulgate a regulation that's more restrictive on operators or as limiting as it is on the Secretary to rebut the presumption. So therefore the rule-out standard just doesn't work. I agree with Mr. Bukowski. I hope we get a rule-out decision from the court in one of these two cases. Unfortunately, I think both administrative law judge decisions are so flawed in that neither one was based on substantial evidence the way they considered it. That would be an easy out to remand both of these cases back without having to come to that issue as to what rebuttal standard would have to be applied. And let the administrative law judge apply the revised 305 standard. Unless you have other questions, thank you for allowing us to argue these cases. Does that save that challenge for a later day? I hope not. This is the third time I've argued this. And I don't know that I'm any better now than I was two years ago when I first tried to argue it. Okay. Thank you very much. Thank you. I'll ask the clerk to adjourn court and then we'll come down.
judges: Barbara Milano Keenan, Henry F. Floyd, Pamela A. Harris